## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TRACY RUSSELL and**<br>**JENNIFER DAVIS,** | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| **vs.** | )  No. 02- *4160 - JPG* |
| **BRYAN HARMS, individually and in his**<br>**official capacity as an officer of the**<br>**Illinois State Police, J. DUSTIN KING,**<br>**individually and in his official capacity**<br>**as an officer of the Illinois State Police**<br>**and DOUG MAIER, individually and in**<br>**his official capacity as an officer of the**<br>**White County Sheriff's Department,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now come Plaintiffs, Tracy Russell and Jennifer Davis, by their attorney Pamela Lacey, and for their Complaint against Defendants, Bryan Harms, J. Dustin King, and Doug Maier, state:

### COUNT I

1.   Plaintiff Tracy Russell is a female citizen of the State of Illinois.

2.   Plaintiff Jennifer Davis is a female citizen of the State of Illinois.

3.   Plaintiffs reside in a single-story house at 309 East Main Street, Norris City, White County, Illinois.

4.   Defendant Bryan Harms is an officer of the Illinois State Police.  Defendant Harms is sued in his individual capacity for money damages

5.   Defendant J. Dustin King is an officer of the Illinois State Police.  Defendant King is sued in his individual capacity for money damages.

*1*

6.     Defendant Doug Maier is an officer of the White County Sheriff's Department. Defendant Maier is sued in his individual capacity for money damages.

7.     At all times pertinent hereto, Defendant Harms, Defendant King, and Defendant Maier were acting under color of state law and their conduct constituted state action.

8.     By this Complaint, Plaintiffs seek judicial redress for violations of their civil rights.

9.     Plaintiffs bring their claims pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 *et. seq*, seeking declaratory and monetary relief for violations of the Fourth Amendment protections against unreasonable searches and seizures, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment.  Plaintiffs also seek damages under the Illinois Constitution and Illinois tort law.

10.    The jurisdiction of the Court is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

11.    On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally invaded and intruded on Plaintiffs' privacy and seclusion in Plaintiffs' home, personally searched Plaintiffs' home, and personally controlled and directed the conduct of other police officers who participated in the invasion and search of Plaintiffs' home.

12.    On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally seized and removed from Plaintiffs' home many items of property that belonged to Plaintiffs, and Defendant Harms, Defendant King, and Defendant Maier personally controlled and directed the conduct of other police officers and other persons who participated in the seizure of Plaintiffs' property.

13.     Included among the items of Plaintiffs' property seized on August 10, 2000, from Plaintiffs' home were:

   a.   All VHS tapes;

   b.   All DVDs;

   c.   All CDs;

   d.   All computer game hardware;

   e.   All computer game software;

   f.   All papers (including but not limited to instruction booklets, calendars, datebooks, checkbooks, checks, money orders, bank statements, receipts, installment payment coupon books, bills, notes, lists, memos, and scraps of paper);

   g.   Cash; and

   h.   A computer.

14.     On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large amount of Plaintiffs' property that family members of police officers were directed to bring boxes to Plaintiffs' home which were used, along with paper bags and other containers, to pack and remove Plaintiffs' property from Plaintiffs home in volume and without marking or individually identifying each item of Plaintiffs' property so seized.

15.     On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large volume of Plaintiffs' property that Greg Hanisch, also known as Ted Dunlap, whom Plaintiffs' believe to be a police officer who was suspended or otherwise on a disciplinary status at the time of the search and seizure, was directed by Defendant Harms, Defendant King, and/or Defendant

Maier to bring a trailer to Plaintiffs' home for the purpose of transporting Plaintiffs' property from Plaintiffs' home.

16.     The property seized from Plaintiffs' home on August 10, 2000, was not contraband, was not stolen property, was not unlawfully possessed by Plaintiffs, and was not evidence that any crime had been committed.

17.     While Plaintiffs' home was being searched and while Plaintiffs' property was being seized on August 10, 2000, Defendant Harms and Defendant King took Plaintiff Russell into their custody and transported her to the police station.

18.     Defendant Harms and Defendant King later released Plaintiff Russell from their custody on August 10, 2000, and then took Plaintiff Davis into their custody and transported Plaintiff Davis to the police station.

19.     On August 11, 2000, Defendant Harms personally searched a storage unit rented by Plaintiff Davis and personally controlled and directed the conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the search of the storage unit.

20.     On August 11, 2000, Defendant Harms personally seized all property located in the storage unit rented by Plaintiff Davis and personally controlled and directed the conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the seizure of the contents of the storage unit.

21.     The property seized on August 11, 2000, belonged to Plaintiff Davis and was not contraband, was not stolen property, was not unlawfully possessed by Plaintiff Davis, and was not evidence that any crime had been committed.

22.     On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff

Davis, who was subsequently arrested and held in custody until the $25,000
bail bond requirements were met.

23.     On October 11, 2000, Defendant Harms signed and caused to be filed an
"Information" by which a felony criminal charge was brought against Plaintiff
Russell, who was subsequently arrested and held in custody until the $25,000
bail bond requirements were met.

24.     On November 1, 2000, Plaintiff Russell voluntarily submitted to a polygraph
examination conducted by a licensed and certified Polygraph Examiner, who
reported that "there were no indications of deception" when Plaintiff Russell
answered "No" to a series of questions directly relating to the criminal charge;
a copy of the Polygraph Examiner's report is attached hereto as "Exhibit A."

25.     On November 1, 2000, Plaintiff Davis voluntarily submitted to a polygraph
examination conducted by a licensed and certified Polygraph Examiner, who
reported that "there were no indications of deception" when Plaintiff Davis
answered "No" to a series of questions directly relating to the criminal charge;
a copy of the Polygraph Examiner's report is attached hereto as "Exhibit B."

26.     On February 25, 2002, the criminal charges against Plaintiff Davis were
dropped.

27.     On February 25, 2002, the criminal charges against Plaintiff Russell were
dropped.

28.     In March 2002, Plaintiffs were allowed to retrieve their property under the
supervision of Defendant Harms, from a storage unit rented by Defendant
Harms.

29.     On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Russell; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit C."

30.     On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Davis; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit D."

31.     Plaintiffs were detained, harassed, intimidated, interrogated, searched, arrested, and deprived of their liberty and their property without consent or sufficient lawful justification.

32.     Defendants' actions described above in unlawfully subjecting Plaintiffs to detentions, interrogations, and searches and in depriving Plaintiffs of their liberty and their property, without consent or sufficient lawful justification, violated Plaintiffs' property rights and of their rights to be free from unreasonable searches and seizures in violation of the United States Constitution, including the Fourth Amendment and the Fifth Amendment.

33.     Each Defendant personally participated in the unlawful conduct, acted jointly with each other Defendant who participated or acquiesced in the unlawful conduct, controlled and directed other law enforcement officers and other persons who participated in the unlawful conduct, failed to intervene to stop other law enforcement officers and other persons from engaging in the unlawful conduct, and knew of and condoned the unlawful conduct.

34.     As a direct and proximate result of Defendants' unlawful conduct described above, Plaintiffs have been denied their constitutional rights, have been deprived of their property, have incurred money damages and economic losses,

6

and have suffered and continue to suffer humiliation, embarrassment, mental fright, emotional distress, and economic losses.

35.  The conduct of Defendant Harms, Defendant King, and Defendant Maier violated Plaintiffs' rights under the United States Constitution.

36.  The rights violated by Defendants were clearly established at the time of the violations.

37.  The law put Defendants on notice that Defendants' conduct was clearly unlawful.

38.  It would be clear to a reasonable police officer that Defendants' conduct was unlawful in the specific context of the circumstances.

39.  A reasonable officer would understand that Defendants' conduct violated Plaintiffs' rights in the situation confronted.

40.  Defendants' conduct did not result from any reasonable mistake.

41.  Defendants' acts were willful, wanton, malicious, oppressive, done with conscious disregard and deliberate indifference for Plaintiffs' rights, and were motivated by evil or wrongful intent or callous disregard for Plaintiffs' rights.

WHEREFORE, Plaintiffs Tracy Russell and Jennifer Davis respectfully request that this Court enter judgment in favor of Plaintiffs and against all Defendants, jointly and severally: declaring that Defendants' conduct violated Plaintiffs' constitutional rights; awarding reasonable and appropriate compensatory damages to Plaintiffs in an amount to be ascertained at trial; awarding exemplary and punitive damages in an amount to be ascertained at trial to deter similar unlawful acts in the future; awarding Plaintiffs' costs, expenses, and reasonable attorneys' fees pursuant to 42 U.C.S. § 1988; and awarding such other and further relief as this Court deems necessary and proper.

## COUNT II

1. Plaintiff Tracy Russell is a female citizen of the State of Illinois.

2. Plaintiff Jennifer Davis is a female citizen of the State of Illinois.

3. Plaintiffs reside in a single-story house at 309 East Main Street, Norris City, White County, Illinois.

4. Defendant Bryan Harms is an officer of the Illinois State Police.  Defendant Harms is sued in his individual capacity for money damages.

5. Defendant J. Dustin King is an officer of the Illinois State Police.  Defendant King is sued in his individual capacity for money damages.

6. Defendant Doug Maier is an officer of the White County Sheriff's Department. Defendant Maier is sued in his individual capacity for money damages.

7. At all times pertinent hereto, Defendant Harms, Defendant King, and Defendant Maier were acting under color of state law and their conduct constituted state action.

8. By this Complaint, Plaintiffs seek judicial redress for violations of their civil rights.

9. Plaintiffs bring their claims pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 *et seq.,* seeking declaratory and monetary relief for violations of the Fourth Amendment protections against unreasonable searches and seizures, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment.  Plaintiffs also seek damages under the Illinois Constitution and Illinois tort law.

10. The jurisdiction of the Court is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

11. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally invaded and intruded on Plaintiffs' privacy and seclusion in Plaintiffs' home, personally searched Plaintiffs' home, and personally controlled and directed

8

the conduct of other police officers who participated in the invasion and search of Plaintiffs' home.

12. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally seized and removed from Plaintiffs' home many items of property that belonged to Plaintiffs, and Defendant Harms, Defendant King, and Defendant Maier personally controlled and directed the conduct of other police officers and other persons who participated in the seizure of Plaintiffs' property.

13. Included among the items of Plaintiffs' property seized on August 10, 2000, from Plaintiffs' home were:

    a.  All VHS tapes;

    b.  All DVDs;

    c.  All CDs;

    d.  All computer game hardware;

    e.  All computer game software;

    f.  All papers (including but not limited to instruction booklets, calendars, datebooks, checkbooks, checks, money orders, bank statements, receipts, installment payment coupon books, bills, notes, lists, memos, and scraps of paper);

    g.  Cash; and

    h.  A computer.

14. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large amount of Plaintiffs' property that family members of police officers were directed to bring boxes to Plaintiffs' home which were used, along with paper bags and other containers, to pack and remove Plaintiffs' property from

Plaintiffs home in volume and without marking or individually identifying each item of Plaintiffs' property so seized.

15. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large volume of Plaintiffs' property that Greg Hanisch, also known as Ted Dunlap, whom Plaintiffs' believe to be a police officer who was suspended or otherwise on a disciplinary status at the time of the search and seizure, was directed by Defendant Harms, Defendant King, and/or Defendant Maier to bring a trailer to Plaintiffs' home for the purpose of transporting Plaintiffs' property from Plaintiffs' home.

16. The property seized from Plaintiffs' home on August 10, 2000, was not contraband, was not stolen property, was not unlawfully possessed by Plaintiffs, and was not evidence that any crime had been committed.

17. While Plaintiffs' home was being searched and while Plaintiffs' property was being seized on August 10, 2000, Defendant Harms and Defendant King took Plaintiff Russell into their custody and transported her to the police station.

18. Defendant Harms and Defendant King later released Plaintiff Russell from their custody on August 10, 2000, and then took Plaintiff Davis into their custody and transported Plaintiff Davis to the police station.

19. On August 11, 2000, Defendant Harms personally searched a storage unit rented by Plaintiff Davis and personally controlled and directed the conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the search of the storage unit.

20. On August 11, 2000, Defendant Harms personally seized all property located in the storage unit rented by Plaintiff Davis and personally controlled and directed the

conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the seizure of the contents of the storage unit.

21. The property seized on August 11, 2000, belonged to Plaintiff Davis and was not contraband, was not stolen property, was not unlawfully possessed by Plaintiff Davis, and was not evidence that any crime had been committed.

22. On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff Davis, who was subsequently arrested and held in custody until the $25,000 bail bond requirements were met.

23. On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff Russell, who was subsequently arrested and held in custody until the $25,000 bail bond requirements were met.

24. On November 1, 2000, Plaintiff Russell voluntarily submitted to a polygraph examination conducted by a licensed and certified Polygraph Examiner, who reported that "there were no indications of deception" when Plaintiff Russell answered "No" to a series of questions directly relating to the criminal charge; a copy of the Polygraph Examiner's report is attached hereto as "Exhibit A."

25. On November 1, 2000, Plaintiff Davis voluntarily submitted to a polygraph examination conducted by a licensed and certified Polygraph Examiner, who reported that "there were no indications of deception" when Plaintiff Davis answered "No" to a series of questions directly relating to the criminal charge; a copy of the Polygraph Examiner's report is attached hereto as "Exhibit B."

26. On February 25, 2002, the criminal charges against Plaintiff Davis were dropped.

27. On February 25, 2002, the criminal charges against Plaintiff Russell were dropped.

28. In March 2002, Plaintiffs were allowed to retrieve their property under the supervision of Defendant Harms, from a storage unit rented by Defendant Harms.

29. On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Russell; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit C."

30. On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Davis; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit D."

31. Plaintiffs were detained, harassed, intimidated, interrogated, searched, arrested, and deprived of their liberty and their property without consent or sufficient lawful justification.

32. Defendants' actions described above in unlawfully subjecting Plaintiffs to detentions, interrogations, and searches and in depriving Plaintiffs of their liberty and their property, without consent or sufficient lawful justification, violated Plaintiffs' property rights and of their rights to be free from unreasonable searches and seizures in violation of the Illinois Constitution.

33. Each Defendant personally participated in the unlawful conduct, acted jointly with each other Defendant who participated or acquiesced in the unlawful conduct, controlled and directed other law enforcement officers and other persons who participated in the unlawful conduct, failed to intervene to stop other law enforcement officers and other persons from engaging in the unlawful conduct, and knew of and condoned the unlawful conduct.

34. As a direct and proximate result of Defendants' unlawful conduct described above, Plaintiffs have been denied their constitutional rights, have been deprived of their property, have incurred money damages and economic losses, and have suffered

and continue to suffer humiliation, embarrassment, mental fright, emotional distress, and economic losses.

35. The conduct of Defendant Harms, Defendant King, and Defendant Maier violated Plaintiffs' rights under the Illinois Constitution.

36. The rights violated by Defendants were clearly established at the time of the violations.

37 The law put Defendants on notice that Defendants' conduct was clearly unlawful.

38. It would be clear to a reasonable police officer that Defendants' conduct was unlawful in the specific context of the circumstances.

39. A reasonable officer would understand that Defendants' conduct violated Plaintiffs' rights in the situation confronted.

40. Defendants' conduct did not result from any reasonable mistake.

41. Defendants' acts were willful, wanton, malicious, oppressive, done with conscious disregard and deliberate indifference for Plaintiffs' rights, and were motivated by evil or wrongful intent or callous disregard for Plaintiffs' rights.

WHEREFORE, Plaintiffs Tracy Russell and Jennifer Davis respectfully request that this Court enter judgment in favor of Plaintiffs and against all Defendants, jointly and severally: declaring that Defendants' conduct violated Plaintiffs' constitutional rights; awarding reasonable and appropriate compensatory damages to Plaintiffs in an amount to be ascertained at trial; awarding exemplary and punitive damages in an amount to be ascertained at trial to deter similar unlawful acts in the future; awarding Plaintiffs' costs, expenses, and reasonable attorneys' fees, and awarding such other and further relief as this Court deems necessary and proper.

## COUNT III

1. Plaintiff Tracy Russell is a female citizen of the State of Illinois.

2. Plaintiff Jennifer Davis is a female citizen of the State of Illinois.

3. Plaintiffs reside in a single-story house at 309 East Main Street, Norris City, White County, Illinois.

4. Defendant Bryan Harms is an officer of the Illinois State Police. Defendant Harms is sued in his individual capacity for money damages.

5. Defendant J. Dustin King is an officer of the Illinois State Police. Defendant King is sued in his individual capacity for money damages.

6. Defendant Doug Maier is an officer of the White County Sheriff's Department. Defendant Maier is sued in his individual capacity for money damages.

7. At all times pertinent hereto, Defendant Harms, Defendant King, and Defendant Maier were acting under color of state law and their conduct constituted state action.

8. By this Complaint, Plaintiffs seek judicial redress for violations of their civil rights.

9. Plaintiffs bring their claims pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 *et seq.*, seeking declaratory and monetary relief for violations of the Fourth Amendment protections against unreasonable searches and seizures, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment. Plaintiffs also seek damages under the Illinois Constitution and Illinois tort law.

10. The jurisdiction of the Court is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

11. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally invaded and intruded on Plaintiffs' privacy and seclusion in Plaintiffs' home, personally searched Plaintiffs' home, and personally controlled and directed

the conduct of other police officers who participated in the invasion and search of Plaintiffs' home.

12. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally seized and removed from Plaintiffs' home many items of property that belonged to Plaintiffs, and Defendant Harms, Defendant King, and Defendant Maier personally controlled and directed the conduct of other police officers and other persons who participated in the seizure of Plaintiffs' property.

13. Included among the items of Plaintiffs' property seized on August 10, 2000, from Plaintiffs' home were:

    a.  All VHS tapes;

    b.  All DVDs;

    c.  All CDs;

    d.  All computer game hardware;

    e.  All computer game software;

    f.  All papers (including but not limited to instruction booklets, calendars, datebooks, checkbooks, checks, money orders, bank statements, receipts, installment payment coupon books, bills, notes, lists, memos, and scraps of paper);

    g.  Cash; and

    h.  A computer.

14. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large amount of Plaintiffs' property that family members of police officers were directed to bring boxes to Plaintiffs' home which were used, along with paper bags and other containers, to pack and remove Plaintiffs' property from

Plaintiffs home in volume and without marking or individually identifying each item of Plaintiffs' property so seized.

15. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large volume of Plaintiffs' property that Greg Hanisch, also known as Ted Dunlap, whom Plaintiffs' believe to be a police officer who was suspended or otherwise on a disciplinary status at the time of the search and seizure, was directed by Defendant Harms, Defendant King, and/or Defendant Maier to bring a trailer to Plaintiffs' home for the purpose of transporting Plaintiffs' property from Plaintiffs' home.

16. The property seized from Plaintiffs' home on August 10, 2000, was not contraband, was not stolen property, was not unlawfully possessed by Plaintiffs, and was not evidence that any crime had been committed.

17. While Plaintiffs' home was being searched and while Plaintiffs' property was being seized on August 10, 2000, Defendant Harms and Defendant King took Plaintiff Russell into their custody and transported her to the police station.

18. Defendant Harms and Defendant King later released Plaintiff Russell from their custody on August 10, 2000, and then took Plaintiff Davis into their custody and transported Plaintiff Davis to the police station.

19. On August 11, 2000, Defendant Harms personally searched a storage unit rented by Plaintiff Davis and personally controlled and directed the conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the search of the storage unit.

20. On August 11, 2000, Defendant Harms personally seized all property located in the storage unit rented by Plaintiff Davis and personally controlled and directed the

conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the seizure of the contents of the storage unit.

21. The property seized on August 11, 2000, belonged to Plaintiff Davis and was not contraband, was not stolen property, was not unlawfully possessed by Plaintiff Davis, and was not evidence that any crime had been committed.

22. On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff Davis, who was subsequently arrested and held in custody until the $25,000 bail bond requirements were met.

23. On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff Russell, who was subsequently arrested and held in custody until the $25,000 bail bond requirements were met.

24. On November 1, 2000, Plaintiff Russell voluntarily submitted to a polygraph examination conducted by a licensed and certified Polygraph Examiner, who reported that "there were no indications of deception" when Plaintiff Russell answered "No" to a series of questions directly relating to the criminal charge; a copy of the Polygraph Examiner's report is attached hereto as "Exhibit A."

25. On November 1, 2000, Plaintiff Davis voluntarily submitted to a polygraph examination conducted by a licensed and certified Polygraph Examiner, who reported that "there were no indications of deception" when Plaintiff Davis answered "No" to a series of questions directly relating to the criminal charge; a copy of the Polygraph Examiner's report is attached hereto as "Exhibit B."

26. On February 25, 2002, the criminal charges against Plaintiff Davis were dropped.

27. On February 25, 2002, the criminal charges against Plaintiff Russell were dropped.

28. In March 2002, Plaintiffs were allowed to retrieve their property under the supervision of Defendant Harms, from a storage unit rented by Defendant Harms.

29. On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Russell; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit C."

30. On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Davis; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit D."

31. Plaintiffs were detained, harassed, intimidated, interrogated, searched, arrested, and deprived of their liberty and their property without consent or sufficient lawful justification.

32. After Defendants took Plaintiffs' property on August 10 and August 11, 2000, Plaintiffs repeatedly requested the return of their property.

33. Between the time that Defendants took Plaintiffs property and the time Plaintiffs' property was returned to Plaintiffs, Plaintiffs' property was converted in violation of Illinois law.

WHEREFORE, Plaintiffs Tracy Russell and Jennifer Davis respectfully request that this Court enter judgment in favor of Plaintiffs and against all Defendants, jointly and severally: awarding reasonable and appropriate compensatory damages to Plaintiffs in an amount to be ascertained at trial; awarding exemplary and punitive damages in an amount to be ascertained at trial to deter similar unlawful acts in the future; awarding Plaintiffs' costs, expenses, and reasonable attorneys' fees; and awarding such other and further relief as this Court deems necessary and proper.

## COUNT IV

1.  Plaintiff Tracy Russell is a female citizen of the State of Illinois.

2.  Plaintiff Jennifer Davis is a female citizen of the State of Illinois.

3.  Plaintiffs reside in a single-story house at 309 East Main Street, Norris City, White County, Illinois.

4.  Defendant Bryan Harms is an officer of the Illinois State Police.  Defendant Harms is sued in his individual capacity for money damages.

5.  Defendant J. Dustin King is an officer of the Illinois State Police.  Defendant King is sued in his individual capacity for money damages.

6.  Defendant Doug Maier is an officer of the White County Sheriff's Department. Defendant Maier is sued in his individual capacity for money damages.

7.  At all times pertinent hereto, Defendant Harms, Defendant King, and Defendant Maier were acting under color of state law and their conduct constituted state action.

8.  By this Complaint, Plaintiffs seek judicial redress for violations of their civil rights.

9.  Plaintiffs bring their claims pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 *et. seq.*, seeking declaratory and monetary relief for violations of the Fourth Amendment protections against unreasonable searches and seizures, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment.  Plaintiffs also seek damages under the Illinois Constitution and Illinois tort law.

10. The jurisdiction of the Court is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

11. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally invaded and intruded on Plaintiffs' privacy and seclusion in Plaintiffs' home, personally searched Plaintiffs' home, and personally controlled and directed

the conduct of other police officers who participated in the invasion and search of Plaintiffs' home

12. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier personally seized and removed from Plaintiffs' home many items of property that belonged to Plaintiffs, and Defendant Harms, Defendant King, and Defendant Maier personally controlled and directed the conduct of other police officers and other persons who participated in the seizure of Plaintiffs' property.

13. Included among the items of Plaintiffs' property seized on August 10, 2000, from Plaintiffs' home were:

    a.  All VHS tapes;

    b.  All DVDs;

    c.  All CDs;

    d.  All computer game hardware;

    e.  All computer game software;

    f.  All papers (including but not limited to instruction booklets, calendars, datebooks, checkbooks, checks, money orders, bank statements, receipts, installment payment coupon books, bills, notes, lists, memos, and scraps of paper);

    g.  Cash; and

    h.  A computer.

14. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large amount of Plaintiffs' property that family members of police officers were directed to bring boxes to Plaintiffs' home which were used, along with paper bags and other containers, to pack and remove Plaintiffs' property from

Plaintiffs home in volume and without marking or individually identifying each item of Plaintiffs' property so seized.

15. On August 10, 2000, Defendant Harms, Defendant King, and Defendant Maier seized such a large volume of Plaintiffs' property that Greg Hanisch, also known as Ted Dunlap, whom Plaintiffs' believe to be a police officer who was suspended or otherwise on a disciplinary status at the time of the search and seizure, was directed by Defendant Harms, Defendant King, and/or Defendant Maier to bring a trailer to Plaintiffs' home for the purpose of transporting Plaintiffs' property from Plaintiffs' home.

16. The property seized from Plaintiffs' home on August 10, 2000, was not contraband, was not stolen property, was not unlawfully possessed by Plaintiffs, and was not evidence that any crime had been committed.

17. While Plaintiffs' home was being searched and while Plaintiffs' property was being seized on August 10, 2000, Defendant Harms and Defendant King took Plaintiff Russell into their custody and transported her to the police station.

18. Defendant Harms and Defendant King later released Plaintiff Russell from their custody on August 10, 2000, and then took Plaintiff Davis into their custody and transported Plaintiff Davis to the police station.

19. On August 11, 2000, Defendant Harms personally searched a storage unit rented by Plaintiff Davis and personally controlled and directed the conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the search of the storage unit.

20. On August 11, 2000, Defendant Harms personally seized all property located in the storage unit rented by Plaintiff Davis and personally controlled and directed the

conduct of other police officers and Greg Hanisch (a/k/a Ted Dunlap) who participated in the seizure of the contents of the storage unit.

21. The property seized on August 11, 2000, belonged to Plaintiff Davis and was not contraband, was not stolen property, was not unlawfully possessed by Plaintiff Davis, and was not evidence that any crime had been committed.

22. On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff Davis, who was subsequently arrested and held in custody until the $25,000 bail bond requirements were met.

23. On October 11, 2000, Defendant Harms signed and caused to be filed an "Information" by which a felony criminal charge was brought against Plaintiff Russell, who was subsequently arrested and held in custody until the $25,000 bail bond requirements were met.

24. On November 1, 2000, Plaintiff Russell voluntarily submitted to a polygraph examination conducted by a licensed and certified Polygraph Examiner, who reported that "there were no indications of deception" when Plaintiff Russell answered "No" to a series of questions directly relating to the criminal charge; a copy of the Polygraph Examiner's report is attached hereto as "Exhibit A."

25. On November 1, 2000, Plaintiff Davis voluntarily submitted to a polygraph examination conducted by a licensed and certified Polygraph Examiner, who reported that "there were no indications of deception" when Plaintiff Davis answered "No" to a series of questions directly relating to the criminal charge; a copy of the Polygraph Examiner's report is attached hereto as "Exhibit B."

26. On February 25, 2002, the criminal charges against Plaintiff Davis were dropped.

27. On February 25, 2002, the criminal charges against Plaintiff Russell were dropped.

28. In March 2002, Plaintiffs were allowed to retrieve their property under the supervision of Defendant Harms, from a storage unit rented by Defendant Harms.

29. On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Russell; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit C."

30. On June 17, 2002, an Order to Expunge and Seal was entered expunging the arrest record of Plaintiff Davis; a copy of said Order to Expunge and Seal is attached hereto as "Exhibit D."

31. Plaintiffs were detained, harassed, intimidated, interrogated, searched, arrested, and deprived of their liberty and their property without consent or sufficient lawful justification.

32. On August 10, 2000, Defendants intruded into Plaintiffs' seclusion by entering Plaintiffs' home.

33. On August 10, 2000, Defendants intruded into Plaintiffs' seclusion by searching Plaintiffs' home.

34. Defendants' intrusions into Plaintiffs' seclusion would be offensive and objectionable to a reasonable person.

35. Defendants' intrusions into Plaintiffs' seclusion were offensive and objectionable to Plaintiffs.

36. Defendants unreasonably intruded into Plaintiffs' privacy.

37. The intrusions cause anguish and suffering on the part of the Plaintiffs.

WHEREFORE, Plaintiffs Tracy Russell and Jennifer Davis respectfully request that this Court enter judgment in favor of Plaintiffs and against all Defendants, jointly and severally: awarding reasonable and appropriate compensatory damages to Plaintiffs in an amount to be ascertained at trial; awarding exemplary and punitive damages in an amount

to be ascertained at trial to deter similar unlawful acts in the future; awarding Plaintiffs'

costs, expenses, and reasonable attorneys' fees; and awarding such other and further relief

as this Court deems necessary and proper.

> Tracy Russell and Jennifer Davis, Plaintiffs,
> by their attorney,
>
> _Pamela Lacey_
> Pamela Lacey

PAMELA LACEY
Bar No. 06184047
123 East Main
P.O. Box 39
Benton, IL  62812
Tel: 618/439-6300
Fax. 618/439-6120

Confirmation Services
847 226.4511
hansen5@midwest.net

# Craig R. Hansen

November 16, 2000

Subject      Tracy Russell

Pam Lacy, Attorney at Law
123 East Main
Benton, Illinois 62812

**REQUEST:**
At the request of the Pam Lacy, the above listed subject was requested to submit to a polygraph examination using the polygraph Detection of Deception Technique at the Carbondale City Building in Carbondale, Illinois on November 1, 2000

**PURPOSE:**
The purpose of Ms Russell's polygraph test was to determine whether or not she stole any audio video materials from Circus Video Also whether or not she allowed Jennifer Russell to purchase audio video material at an illegal discount or set aside tapes until later times during close out sales

**PRE-TEST INTERVIEW:**
During the polygraph pre-test interview, Ms. Russell denied steal any videos from Circus Video Additionally, Ms Russell stated that she did not plan or arrange to allow Ms. Davis or any other employee to purchase tapes cheaper than offered to the general public

*Achieving Excellence Together*



EXHIBIT

A

*November 16  2000*
*Page 2*

**TEST QUESTIONS:**
In formulating the polygraph questions for Ms. Russell, this examiner used standard accepted question formulation guidelines   The questions asked of Ms  Russell were specific in nature and directly related to the issue(s) under question   All the questions were formulated and reviewed with Ms  Russell prior to the examination

**QUESTIONS:**
1   Did you steal any of that audio visual material from Circus Video?
ANSWER   No

2.  Have you arranged for Jennifer Davis to purchase audio visual material at a discount?
ANSWER   No

3   Have you withheld any circus video items until later times in close out sales?
ANSWER:   No

4   Do you know if Jennifer Davis has stolen any audio visual materials from any Circus video stores?
ANSWER   No

**RESULTS:**
The polygraph records were evaluated using standard scoring techniques and the results indicated there were **no indications of deception** on Ms. Russell's polygraph records when she answered the above listed questions.

**FURTHER INFORMATION:**
If you have any questions concerning any of the above listed information, please do not hesitate to contact me at 847 226 4511.

Craig R  Hansen

Polygraph Examiner, AAPP,APA,IPS

Confirmation Services
847 226 4511
hansen5@midwest.net

# Craig R. Hansen

November 16, 2000

Subject      Jennifer Davis

Pam Lacy, Attorney at Law
123 East Main
Benton, Illinois 62812

**REQUEST:**
At the request of the Pam Lacy, the above listed subject was requested to submit to a polygraph examination using the polygraph Detection of Deception Technique at the Carbondale City Building in Carbondale, Illinois on November 1, 2000

**PURPOSE:**
The purpose of Ms  Davis's polygraph test was to determine whether or not she stole any audio video materials from Circus Video.  Also whether or not she was allowed by Tracy Russell to purchase audio video material at an illegal discount.

**PRE-TEST INTERVIEW:**
During the polygraph pre-test interview, Ms  Davis denied steal any videos from Circus Video   Additionally, Ms. Davis stated that she did not plan or arrange to allow Ms. Russell allow her to purchase tapes cheaper than offered to the general public

*Achieving Excellence . . . Together*

EXHIBIT

tabbies'

B

*November 16, 2000*
*Page 2*

**TEST QUESTIONS:**
In formulating the polygraph questions for Ms. Davis, this examiner used standard accepted question formulation guidelines.  The questions asked of Ms. Davis were specific in nature and directly related to the issue(s) under question.  All the questions were formulated and reviewed with Ms. Davis prior to the examination.

**QUESTIONS:**
1    Did you steal any of that audio visual material from Circus Video?
ANSWER   No

2    Did you purchase any audio visual material at a discount from Tracy Russell?
ANSWER·  No

3    Did you arrange for Tracy Russell to set aside audio visual material until later in close out sales?
ANSWER   No

**RESULTS:**
The polygraph records were evaluated using standard scoring techniques and the results indicated there were **no indications of deception** on Ms. Davis's polygraph records when she answered the above listed questions.

**FURTHER INFORMATION:**
If you have any questions concerning any of the above listed information, please do not hesitate to contact me at 847.226.4511.

Craig R  Hansen

Polygraph Examiner, AAPP,APA,IPS

## IN THE CIRCUIT COURT SECOND JUDICIAL CIRCUIT
## WHITE COUNTY, ILLINOIS

PEOPLE OF                     )
THE STATE OF ILLINOIS,        )
                              )
    Plaintiff,          )
                              )
      vs.           )          No. 2000-CF-137
                              )
TRACY J. RUSSELL,             )
                              )
    Defendant/Petitioner.   )

**FILED**

JUN 1 7 2002

*Ellen L. Littlejohn*
CIRCUIT COURT
WHITE COUNTY

Charge  Theft          Date of Arrest  08-10-00

DOB   02-11-61          Sex  F       Race  W

Arresting Authority  Illinois State Police, S/A B N Harms   ID# 3813

Return Records to Defendant/Petitioner  Tracy Russell

Address  309 East Main, Box 106, Norris City, IL  62869

### ORDER TO EXPUNGE AND SEAL

    This cause comes before the Court on the Defendant/Petitioner's Petition to Expunge and Seal  The Court being fully advised, **FINDS:**

1    The Defendant/Petitioner has complied with the provisions of 20 ILCS 2630/5

2    The Defendant/Petitioner has never been previously charged or convicted of any criminal offense, felony, misdemeanor, or violation of municipal ordinance

3    The Defendant/Petitioner was arrested by the arresting authority on the date and for the offense stated above

4    The Defendant/Petitioner was released without being convicted

1



EXHIBIT
C

5    The Defendant/Petitioner was not granted supervision for or convicted of (1) driving under the influence, or (2) any sexual offense committed against a minor under 18 years of age as a result of this arrest   Sexual offense committed against a minor includes but is not limited to the offense of indecent solicitation of a child or criminal sexual abuse when the victim of such offense is under 18 years of age

6    The Defendant/Petitioner has paid all fines, costs, and fees for the filing of this Petition

7    The Defendant/Petitioner has served notice on the arresting authority, the Department of the State Police (in an offense required to be reported to the Department), the State's Attorney and chief legal officer of the unit of local government effecting the arrest and that none of said agencies have filed an objection to the Petition to Expunge and Seal within 30 days from the date of Notice

**IT IS THEREFORE ORDERED** as follows

A    That the Petition to Expunge and Seal the Defendant's arrest record is granted and the official records be expunged or sealed as follows

1    The Clerk of the Circuit Court **SHALL SEAL** all records of arrest of the Petitioner together with all photographs, fingerprints, and other records of identification taken as a result of the arrest   Said records of the circuit clerk shall be **SEALED** as provided by Administrative Order #97-13 of the Second Judicial Circuit

2    The Department of State Police **SHALL EXPUNGE** all records of the Petitioner together with all photographs, fingerprints and other records of identification taken as a result of the arrest **UNLESS** the disposition is one

2

enumerated in Paragraph B    That said expungement law enforcement records shall be returned to the Defendant/Petitioner or the Defendant/Petitioner's attorney

3    The arresting authority **SHALL EXPUNGE** all records of the Petitioner together with all photographs, fingerprints and other records of identification taken as a result of the arrest    That said expunged law enforcement records shall be returned to the Defendant/Petitioner or the Defendant/Petitioner's attorney

4    That the arresting authority shall request the return of any other law enforcement records relating to the incident set forth in the petition which have been transferred to the Federal Bureau of Investigation or any other law enforcement agency as a result of said arrest and return them to the Defendant/Petitioner or the Defendant/Petitioner's attorney

B    That the Department of State Police, however, shall not expunge but shall only **SEAL** those records that result in a disposition of supervision for a violation of Section 3-707, 3-708, 3-710, 5-401 3, or 11-503 of the Illinois Vehicle Code or a similar provision of a local ordinance, or for a violation of Section 12-3 2, 12-15, or 16A-3 of the Criminal Code of 1961, or those records that result in a disposition of probation under Section 10 of the Cannabis Control Act, Section 410 of the Illinois Controlled Substance Act, Section 12-4 3(b)(1) and (2) of the Criminal Code of 1961, and Section 40-10 of the Illinois Alcoholism and other Drug Abuse and Dependency Act when the judgment of conviction has been vacated

C    That the arrest records **SEALED** by the Department of State Police may be disseminated only as required by law or to the Arresting Authority, State's

3

Attorney and Court upon the Defendant/Petitioner's later arrest for the same or a similar offense or for the purpose of sentencing for any subsequent felony Upon conviction, the Department of Corrections shall have access to such sealed records pertaining to Defendant/Petitioner

D      That any records **SEALED** by the Clerk of the Circuit Court shall be inspected only upon order of the court upon good cause shown

ENTER _____ June 17 _____, _____, 2002

_____
PRESIDING JUDGE

CERTIFIED TRUE COPY
ELLEN I. PETTIJOHN
CLERK OF THE CIRCUIT COURT

By _Ellen S Pettijohn_
                            Clerk

Date __June 19, 2002__

4

## IN THE CIRCUIT COURT SECOND JUDICIAL CIRCUIT
## WHITE COUNTY, ILLINOIS

PEOPLE OF )
THE STATE OF ILLINOIS, )
)
    Plaintiff, )
)
       vs. )    No. 2000-CF-136
)
JENNIFER L. DAVIS, )
)
    Defendant/Petitioner. )

**FILED**

JUN 1 7 2002

*Ellen l [signature]*
CIRCUIT COURT
WHITE COUNTY

Charge  Theft         Date of Arrest  10-11-00

DOB  03-09-74        Sex  F    Race  W

Arresting Authority  Illinois State Police, S/A B N  Harms  ID#  3813

Return Records to Defendant/Petitioner  Jennifer Davis

Address  309 East Main, Box 106, Norris City, IL  62869

### ORDER TO EXPUNGE AND SEAL

    This cause comes before the Court on the Defendant/Petitioner's Petition to Expunge and Seal  The Court being fully advised, **FINDS:**

1    The Defendant/Petitioner has complied with the provisions of 20 ILCS 2630/5

2    The Defendant/Petitioner has never been previously charged or convicted of any criminal offense, felony, misdemeanor, or violation of municipal ordinance

3    The Defendant/Petitioner was arrested by the arresting authority on the date and for the offense stated above

4    The Defendant/Petitioner was released without being convicted

1



5    The Defendant/Petitioner was not granted supervision for or convicted of (1) driving under the influence, or (2) any sexual offense committed against a minor under 18 years of age as a result of this arrest   Sexual offense committed against a minor includes but is not limited to the offense of indecent solicitation of a child or criminal sexual abuse when the victim of such offense is under 18 years of age

6    The Defendant/Petitioner has paid all fines, costs, and fees for the filing of this Petition

7    The Defendant/Petitioner has served notice on the arresting authority, the Department of the State Police (in an offense required to be reported to the Department), the State's Attorney and chief legal officer of the unit of local government effecting the arrest and that none of said agencies have filed an objection to the Petition to Expunge and Seal within 30 days from the date of Notice

**IT IS THEREFORE ORDERED** as follows

A    That the Petition to Expunge and Seal the Defendant's arrest record is granted and the official records be expunged or sealed as follows

1    The Clerk of the Circuit Court **SHALL SEAL** all records of arrest of the Petitioner together with all photographs, fingerprints, and other records of identification taken as a result of the arrest   Said records of the circuit clerk shall be **SEALED** as provided by Administrative Order #97-13 of the Second Judicial Circuit

2    The Department of State Police **SHALL EXPUNGE** all records of the Petitioner together with all photographs, fingerprints and other records of identification taken as a result of the arrest **UNLESS** the disposition is one

2

enumerated in Paragraph B   That said expungement law enforcement records shall be returned to the Defendant/Petitioner or the Defendant/Petitioner's attorney

3   The arresting authority **SHALL EXPUNGE** all records of the Petitioner together with all photographs, fingerprints and other records of identification taken as a result of the arrest   That said expunged law enforcement records shall be returned to the Defendant/Petitioner or the Defendant/Petitioner's attorney

4   That the arresting authority shall request the return of any other law enforcement records relating to the incident set forth in the petition which have been transferred to the Federal Bureau of Investigation or any other law enforcement agency as a result of said arrest and return them to the Defendant/Petitioner or the Defendant/Petitioner's attorney

B   That the Department of State Police, however, shall not expunge but shall only **SEAL** those records that result in a disposition of supervision for a violation of Section 3-707, 3-708, 3-710, 5-401 3, or 11-503 of the Illinois Vehicle Code or a similar provision of a local ordinance, or for a violation of Section 12-3 2, 12-15, or 16A-3 of the Criminal Code of 1961, or those records that result in a disposition of probation under Section 10 of the Cannabis Control Act, Section 410 of the Illinois Controlled Substance Act, Section 12-4 3(b)(1) and (2) of the Criminal Code of 1961, and Section 40-10 of the Illinois Alcoholism and other Drug Abuse and Dependency Act when the judgment of conviction has been vacated

C   That the arrest records **SEALED** by the Department of State Police may be disseminated only as required by law or to the Arresting Authority, State's

3

Attorney and Court upon the Defendant/Petitioner's later arrest for the same or

a similar offense or for the purpose of sentencing for any subsequent felony

Upon conviction, the Department of Corrections shall have access to such

sealed records pertaining to Defendant/Petitioner

D    That any records **SEALED** by the Clerk of the Circuit Court shall be inspected

only upon order of the court upon good cause shown

ENTER _____ June 17 _____, _____, 2002

PRESIDING JUDGE

CERTIFIED TRUE COPY
ELLEN I  PETTIJOHN
CLERK OF THE CIRCUIT COURT

By _____
                    Clerk
Date _____

4