UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRACY RUSSELL and JENNIFER DAVIS,

          Plaintiffs,

     v.                                       Case No. 02-cv-4160-JPG

BRIAN HARMS, and J. DUSTIN KING, sued
individually and in their official capacities as officers of
the Illinois State Police, and DOUG MAIER, sued
individually an in his official capacity as an officer of the
White County Sheriff's Department,

          Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on the motions for summary judgment filed by

defendant Doug Maier ("Maier") (Doc. 34) and by defendants Brian Harms ("Harms") and J.

Dustin King ("King") (Doc. 53). Plaintiffs Tracy Russell ("Russell") and Jennifer Davis

("Davis") have responded to both motions in a single brief (Docs. 38 & 59). Maier has replied

to the response (Doc. 39), as have Harms and King (Doc. 61). Russell and Davis have also

submitted additional authority in support of their position (Doc. 70), and the Court will also

grant their motion to submit additional authority beyond that (Doc. 77).

### I.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v.*

*Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must

construe the evidence in the light most favorable to the nonmoving party and draw all reasonable

inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*Spath*, 211 F.3d at 396.  Where the moving party fails to meet its strict burden of proof, a court

cannot enter summary judgment for the moving party even if the opposing party fails to present

relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest

upon the allegations contained in the pleadings but must present specific facts to show that a

genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson*

*v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material fact is not

demonstrated by the mere existence of "some alleged factual dispute between the parties,"

*Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);  *Michas v. Health Cost*

*Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000)**.**  Rather, a genuine issue of material fact

exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the

evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.   Facts

Taken the light most favorable to Russell and Davis, the admissible evidence reveals the

following facts:

This matter stems from searches and seizures that occurred after Harms, an Illinois State

Police officer, received a report from Mark Bayley, vice president of Martin & Bayley, Inc., a

company that owns several Circus Video rental stores.  Harms spoke with Bayley several times

about suspected thefts of Martin & Bayley's property.  In these conversations, Bayley told him

that Russell was a manager for Martin & Bayley's Circus Video stores and that she had

unregulated access to the stores' video cassette and Nintendo game inventory.  Bayley also told

2

Harms that he believed that Russell and Davis, Russell's roommate, were auctioning off and receiving payment for hundreds of video tapes and Nintendo games via the internet.

Bayley's report sparked an investigation in which the Illinois State Police purchased video tapes over the internet that they believed were sold by Russell and Davis.  Some of the tapes purchased arrived in a box that was marked with the words "For Circus."  The police reviewed the tapes with an officer of Circus Video, who confirmed that the tapes showed indications of being from Martin & Bayley's Circus Video stores or marks that appeared to be where such indications had been removed.  Bayley informed Harms that Russell had no right to any Circus Video video tapes or Nintendo games and had not purchased them from Martin and Bayley or their movie suppliers.

Armed with this information, on August 10, 2000, Harms signed and presented a complaint for a search warrant to a state court judge.  The complaint alleged that certain items (video tapes, Nintendo games, written records of sales, a computer, computer documents, bank records, e-mail records relating to E-bay auctions and financial records relating to E-bay auctions) had "been used in the commission or . . . constitute[d] evidence of the offense of Theft."  In the complaint for the search warrant, Harms recited the information he learned from Bayley and the Illinois State Police investigation.  He also stated that in order to carry on the suspected internet transactions, Russell and Harms would need to have the type of unlimited, confidential access to a computer that would only be available at their residence, and that he believed that personal, confidential records of numerous auctions and sales would be found in their home.  The judge issued the requested search warrant, which authorized the search of the plaintiffs' home and the seizure of:

video tapes
Nintendo games
written records of sales
computer
computer documents
bank records
e-mail records relating to E-bay auctions
financial records relating to E-bay auctions.

That same day, Harms executed the warrant, assisted by Illinois State Police Officer

King, White County Sheriff's Deputy Maier, both defendants in this case, and others.  In the

search, they found boxes containing video tapes, Nintendo games, DVDs, CDs, and non-

Nintendo equipment and games, all of which they seized.  They also seized all the papers in the

home, cash and a computer.

During the search of the plaintiffs' home, Harms and King took Russell into custody and

took her to the police station for questioning.  After they released her, they did the same with

Davis.  During Davis's questioning, she signed a paper indicating that she consented to a search

of a storage locker leased to her.  The Court reaches this conclusion after careful comparison of

the evidence surrounding the alleged consent.  It is true that Harms makes a conclusory

allegation that Davis voluntarily consented.  However, in view of a consent form bearing a

signature of "Jennifer Davis" that closely resembles the "Jennifer Davis" signature on her

affidavit, and Harms's authentication of the consent form as the embodiment of Davis's consent

to search, a reasonable inference is that Davis signature appears on the consent form.  On the

other hand, while Davis states that Harms never asked her for permission to search, she does not

state that she did not sign the consent form or that she did not, in fact, consent to the search.

Because it is possible that she signed the consent form not pursuant to a request from Harms,

Davis has presented no conflicting evidence to create an issue of fact.  Therefore, the only

4

reasonable inference from the evidence is that Davis consented to the search of her storage locker.

Pursuant to Davis's consent, the next day Harms and others searched Davis's storage locker and seized all of its contents, namely, 135 boxes of VHS tapes, Nintendo games, other video games and CDs.

Based on the discovery of the seized materials, on Harms's complaint, felony informations were filed against Russell and Davis. They were both arrested and detained until they posted bail. Those charges were dropped approximately sixteen months later after Russell and Davis passed polygraph tests regarding the alleged crime. Shortly after the charges were dropped, Russell and Davis were permitted to retrieve the property that had been seized from them during the search of their home and Davis's storage locker. Approximately three months later, in June 2002, their arrest records were expunged.

Russell and Davis filed this lawsuit in August 2002 alleging that Harms, King and Maier violated their federal (Count I) and state (Count II) constitutional rights in the aforementioned searches, seizures and arrests. They also bring claims for conversion (Count III) and unreasonable intrusion upon the seclusion of another (Count IV).

## III.   Pleadings

There is some dispute about what claims are contained in the plaintiffs' complaint. The complaint is certainly vague, alleging only that the plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures was violated "without consent or sufficient lawful justification." *See* Compl. ¶ 32. Nowhere does the complaint even hint at the specific ways in which the plaintiffs believe their Fourth Amendment rights were violated by the actions alleged in the complaint. In fact, the Court would have been inclined to grant a motion for a more

definite statement under Federal Rule of Civil Procedure 12(e) had the defendants filed such a motion.  However, they did not, and, judging from the defendants' reply briefs, the parties seem to have figured out through discovery the gravamen of the plaintiffs' complaints.  Requiring a more definite statement at this point in the litigation, essentially on the eve of trial, would be pointless where all agree about the issues.

It is clear from the plaintiffs' response to the motion for summary judgment that the vague claim in the complaint encompasses the following claims regarding the search warrant for the August 10 and 11, 2000, searches and seizures:  (1) the warrant was not supported by probable cause, (2) the warrant was invalid on its face, (3) the search of the plaintiffs' home and seizure of materials there exceeded the scope of the warrant, (4) the seizure of the plaintiffs themselves during the search of their home was not supported by probable cause and was not pursuant to a valid search, and (5) the search of Davis's storage locker was not pursuant to valid consent.

**IV.    Analysis**

The defendants raise a variety of arguments, the most compelling of which is qualified immunity.  Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997).  A "law enforcement officer who participates in a search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment."  *Anderson v. Creighton,* 483 U.S. 635, 636-37 (1987); *accord Forman*, 104 F.3d at 957.

6

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Forman*, 104 F.3d at 957. If it is clear that there has been no constitutional violation, there is no need for further inquiry; the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. In the interest of promoting clarity in legal standards, the Court should decide this question even if the officer is clearly immune. *Wilson*, 526 U.S. at 609; *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

If the evidence demonstrates that there may have been a constitutional violation, then the court should determine whether the right allegedly violated was clearly established at the relevant time. *Saucier*, 533 U.S. at 202. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201; *see McNair v. Coffey*, 279 F.3d 463, 465 (7th Cir. 2002). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Forman*, 104 F.3d at 957-58.

A.   Search and Seizure of Property from Home

1.   Probable Cause for Search

The plaintiffs allege that all three defendants are liable for their participation in the search of their home on August 10, 2000. The search was conducted pursuant to a warrant, but the plaintiffs claim that the warrant was not supported by probable cause and that a reasonable officer would have been aware of the warrant's invalidity and that executing it would have violated the Fourth Amendment. The plaintiffs note that the affidavit upon which the search

warrant was based alleges that certain items were in the plaintiffs' home but does not allege that there was probable cause to believe that a crime had been committed.  That they had certain items in their homes, the plaintiffs contend, is not a crime.  Further, the plaintiffs fault Harms for failing to further investigate possible legitimate sources of the videos and games.

On the other hand, the defendants argue that the warrant was supported by probable cause and that they could reasonably have believed that the search was lawful in light of the facts known to them and the law as it existed on August 10, 2000.  Therefore, they believe that they are entitled to qualified immunity.

The probable cause question will resolve the merits of this claim as well as the qualified immunity issue, for if there was no constitutional violation, the defendants are entitled to qualified immunity.  There is probable cause for a search warrant where there is a substantial basis for concluding that a search would uncover evidence of wrongdoing.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  The totality of the circumstances must be considered, including "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information."  *Id.* at 239-40. The Court generally defers to the judgment of the judge issuing the warrant about whether probable cause exists unless the affidavit was knowingly or intentionally false or revealed a reckless disregard for the truth, of which there is no evidence in this case.  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

The Court finds that there is no genuine issue of material fact about whether probable cause existed to support the warrant.  Harms's complaint for the search warrant clearly set out circumstantial evidence that established a substantial basis for believing that a search of the plaintiffs' residence would uncover evidence of wrongdoing.  It recounted circumstantial

evidence that Russell and Davis had stolen and subsequently sold video tapes and Nintendo games that belonged to a Circus Video store and that they did not rightfully possess.  It also described Russell's opportunity to illicitly obtain the materials and her lack of opportunity to do so legitimately.  The complaint was based on information received from reliable sources:  an officer of Martin and Bayley who was in a position to know about Russell's access to inventory and opportunities for her to make legitimate purchases, an officer of Circus Video who was in a position to identify video tapes and games from Martin and Bayley's Circus Video stores, and Illinois State Police officers who purchased suspicious tapes from Davis over the internet and tracked the payment she received.  Harms also drew a reasonable inference that documentation of suspected illegal activities would be secreted from discovery in their home, which was described in the complaint.

This information sworn to by Harms certainly constitutes a substantial basis for concluding that a search of Russell and Davis's home would uncover evidence of theft of video tapes and Nintendo games.  The complaint in no way approximates the overly conclusory statements cited in *Gates* as insufficient to support a probable cause finding.  *Gates*,  462 U.S. at 239 (citing *Nathanson v. United States*, 290 U.S. 41 (1933) (statement that an officer "has cause to suspect and does believe that" illegal liquor is located on a certain premises);  *Aguilar v. Texas*, 378 U.S. 108 (1964) (statement that an officer has received reliable information from a credible person and believes that drugs are in a home));  *accord United States v. Ventresca*, 380 U.S. 102, 108-09 (1965).  That further investigation might have undermined the probable cause finding to some extent is irrelevant.  "'[O]nce police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence.'"  *Forman*, 104 F.3d

at 962 (quoting *Eversole v. Steele,* 59 F.3d 710, 718 (7th Cir. 1995)).  Because there was no constitutional problem with the issuance of the warrant based on Harms's complaint, Harms, King and Maier are entitled to qualified immunity.

Even if Harms's complaint had not been sufficient to establish probable cause to search the plaintiffs' home, the defendants would still be entitled to qualified immunity for this claim. The plaintiffs have pointed to no case clearly establishing that, under a set of facts closely analogous to those presented in this case, a reasonable officer in the defendants' position would have known that the complaint was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  *See Malley v. Briggs*, 475 U.S. 335, 345 (1986) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).[1]

For the foregoing reasons, the Court concludes that no reasonable jury could find that probable cause was lacking to support a search of the plaintiffs' residence on August 10, 2000, and, in light of the law as it existed on August 10, 2000, a reasonable officer would not have believed that the warrant was unsupported by probable cause and that executing it would violate the Fourth Amendment.

## 2.    Facial Validity of Warrant

The plaintiffs also claim that all three defendants are liable because the warrant for the search of their home was flawed on its face such that a reasonable officer should have known that executing it was unconstitutional.  The plaintiffs believe the warrant was not particular enough with respect to the items to be seized because it describes no particular video tape or

---

[1]The Court assumes for the purposes of this motion that King and Maier were aware of the content of Harms's complaint for a search warrant.  If they were not aware of the contents of the complaint, it would be untenable to fault them for executing the warrant on the grounds that it was unsupported by probable cause.

Nintendo game and is not limited to items reported to be missing.  On the contrary, the plaintiffs assert that the warrant was essentially a general warrant authorizing unlimited rummaging through their belongings.  Again, the substantive question in this claim – the particularity of the warrant – will resolve the merits of this claim as well as the qualified immunity issue.

The Fourth Amendment prohibits general warrants; a search warrant must particularly describe the objects to be seized in the search, leaving nothing to the discretion of the officers executing the warrant.  *Andresen v. Maryland*, 427 U.S. 463, 479-80 (1976);  *see Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971);  *Stanford v. Texas*, 379 U.S. 476, 480-85 (1965).  It does not, however, have to contain elaborate details.  It need only enable the officers executing the warrant to "identify the things to be seized with reasonable certainty" by containing descriptions "as particular as circumstances permit."  *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995).  A warrant meets the particularity requirement if "an executing officer reading the description in the warrant would reasonably know what items are to be seized. . . .  If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized."  *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998).

There is no genuine issue of fact as to whether the warrant in this case passes constitutional muster.  It undoubtedly described the items sought to be seized from Russell and Davis's home sufficient to allow the defendants to know what they were searching for with reasonable certainty under the circumstances.  That the warrant did not specify the exact titles of missing videotapes or the specific markings of items that originated from Circus Video is not fatal to its validity.  The complaint for the warrant indicates that hundreds of videotapes and Nintendo games were involved in the suspected crime.  Listing the specific title of each videotape and Nintendo game would have required an inventory of the items at Circus Video to determine

11

exactly what was not there that should have been there.  This was not practicable or required under the circumstances.  Similarly, the warrant was not required to describe the hallmarks of a Circus Video stickers, tags, bar codes or other markings, or the appearance of items from which such hallmarks have been removed.  In fact, such instructions would likely serve only to confuse the officers executing the warrants because they would then be forced to scrutinize each tape in minute detail to determine, for example, if a pucker in the packaging was caused by removal of a Circus Video sticker or something more innocuous.  Such instructions would add unacceptable uncertainty to the execution of the warrant.  With respect to the other items to be seized, the Court finds that their descriptions were sufficiently particular in light of the nature of the items, the suspected criminal activity and the place to be searched.

Even if the warrant listing "video tapes," "Nintendo games" or any other items was too broad to satisfy constitutional standards, the defendants would still be entitled to qualified immunity.  The plaintiffs have not demonstrated that at the time the defendants executed the warrant a reasonable officer in their position would have known, based on Supreme Court or Seventh Circuit cases or a trend in other cases, that in the particular situation the warrant was facially invalid as a general warrant.  The officers were not "plainly incompetent," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), to have believed that the warrant, issued by a neutral judge upon probable cause, was sufficiently particular on its face.  Accordingly, they are entitled to qualified immunity from the plaintiffs' claims stemming from the breadth of the search warrant.

3.    Scope of Seizure

The plaintiffs claim that all three defendants are liable because they exceeded the scope of the search warrant by seizing items not listed in the warrant, namely, DVDs, CDs and non-Nintendo equipment and games such as Playstation, Sega, Gameboy and others.

The defendants argue that they were correct to broadly interpret the warrant to include the authority to seize media items similar to the specific items listed in the search warrant. Alternatively, they argue that the additional items seized were also the type of items sold by Circus Video, were in the officers' plain view and were therefore able to be seized even if not listed in the warrant.

The defendants' first argument is that, broadly construed, the warrant authorizes seizure of DVDs, CDs and equipment and games not manufactured by Nintendo.  The law clearly permits those executing warrants to interpret them broadly.  *Hessel v. O'Hearn,* 977 F.2d 299, 302 (7th Cir. 1992).  If warrants had to be construed narrowly, evidence not seized in an overabundance of caution would likely be gone by the time a later search could be conducted.  *Id.*  On the other hand, items seized in a liberal interpretation of a warrant can always be returned to the owner later if they turn out not to be evidence of a crime.  *Id.*

*Hassel* itself is instructive.  In that case, law enforcement officers suspected that the plaintiffs were operating an illegal gambling business.  *Id.* at 301.  Officers obtained a search warrant authorizing them to seize illegal lottery tickets, "money which [*sic*] is the fruit or has been used in the commission of a crime" and "documents that may constitute evidence of a crime."  *Id.*  In the search, the officers seized several items clearly covered by the descriptions in the search warrant along with legal lottery tickets, an adding machine, the cover of a telephone book, small change, and glasses, jars, and other containers holding the change.  *Id.*  Those items were returned to the plaintiffs the following day after the district attorney had reviewed the yield of the search.  *Id.*  The plaintiffs were convicted and sued under § 1983 for the wrongful seizure of the items that were not clearly covered by the plain terms of the search warrant.  *Id.*  The Seventh Circuit Court of Appeals held that the officers executing the search did not violate the

plaintiffs' constitutional rights because, reasonably and broadly interpreted, all of the items they seized were covered by the search warrant.  *Id.* at 302.  A warrant can justify seizure of items that are clearly not covered by the descriptions on the face of the warrant, such as the adding machine, if there is no flagrant disregard of the warrant restrictions.  *Id.*

The rule in *Hassel* applies in this case.  The items seized but not specifically listed in the search warrant were of the same nature as the items listed in the warrant;  they were all media items.  If a warrant in *Hassel* could conceivably authorize seizure of an adding machine with language specifying only seizure of tickets, money and documents, the warrant at issue in this case is clearly sufficient to authorized seizure of items similar in nature to and in the same boxes as those on the fact of the warrant.  It was reasonable for the defendants to broadly construe the warrant authorizing seizure of video tapes and Nintendo games to also authorize seizure of other media items such as DVDs, CDs and other non-Nintendo equipment and games.

Even if the warrant had not authorized such seizure when reasonably and broadly construed, the defendants would still be entitled to qualified immunity.  In light of *Hassel*, it would not have been apparent to a reasonable officer that the seizure in this case was clearly unlawful.  They did not flagrantly disregard the limits of the warrant and seize, for example, jewelry, toasters, clothing or other items completely foreign to the items listed in the warrant.  The officers were clearly not "plainly incompetent" to seize other media items such as DVDs, CDs and non-Nintendo equipment and games based on the warrant issued.  For these reasons, the defendants are entitled to qualified immunity from this claim.

Alternatively, the defendants are entitled to qualified immunity because it was not clearly established at the time that the other media items seized – DVDs, CDs and non-Nintendo equipment and games – were not incriminating and subject to seizure under the plain view

14

doctrine.  Under the plain view doctrine, an officer may seize items if (1) the officer has a right to be present, (2) the item is in plain view of the officer and (3) the incriminating nature of the item is immediately apparent.  *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993);  *Horton v. California*, 496 U.S. 128, 136-37 (1990);  *see Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (plurality opinion).  Items that are not inherently incriminating by themselves may assume an incriminating nature in connection with the crime under investigation and may therefore be seized if they are in plain view.  *United States v. Bruce*, 109 F.3d 323, 328-29 (7th Cir. 1997) (shotgun shells not listed in warrant but incriminating in connection with bank robbery).

Prior portions of this order resolve questions about the first prong of the plain view test, and the plaintiffs do not contest that the DVDs, CDs and non-Nintendo equipment and games were in plain view of the searching officers.  Thus, the question is whether the incriminating nature of the DVDs, CDs and non-Nintendo equipment and games was immediately apparent. The Court believes that, considering the nature of the crime suspected – the theft of massive quantities of video tapes and Nintendo games – and the proximity of the items in question to the items explicitly listed in the warrant – in the same boxes – other media items present assumed an incriminating nature and were therefore properly subject to seizure.  In any case, the plaintiffs have not demonstrated that the law was clearly established at the time to show that the plain view doctrine did not apply.  For this alternative reason, the Court finds that the defendants are entitled to qualified immunity from this claim.

B.     Arrest of Plaintiffs

The plaintiffs claim that they were seized in violation of their Fourth Amendment rights when they were taken into custody during the search of their home on August 10, 2000.  They note that there was no warrant for their arrest or charges filed against them at the time and no

15

complaint filed by Martin & Bayley at the time.  They argue that the illegality of the search

vitiated any seizure stemming from it and that the law was clearly established on this point at the

time.

The plaintiffs are correct that the seizure of a person in connection with and based on a

search of the person's home is unjustified if the search itself was illegal.  *Jacobs v. City of

Chicago*, 215 F.3d 758, 772 (7th Cir. 2000) (citing *Florida v. Royer*, 460 U.S. 491, 499 (1983)).

Where the underlying search is illegal, the basis for the person's seizure must come from an

independent probable cause determination in order for it to be legal.  *Id.*  However, in light of the

Court's prior rulings on the legality of the searches and the state of the clearly established law at

the time, the plaintiffs' point is irrelevant.  The searches were legal and were sufficient to support

seizure of the plaintiffs during the search.  Furthermore, although the general proposition

advanced by the plaintiffs was well-established at the time, they have not pointed to any case with

remotely similar facts to show that a reasonable officer *in the defendants' situation* would have

known that seizing the plaintiffs violated the Fourth Amendment.

Even if the plaintiffs' seizure was not simply incident to the search warrant, there is no

question of fact about whether it violated the Fourth Amendment.  A person's warrantless arrest

is an unreasonable seizure if there was no probable cause to believe that the person arrested had

committed or was committing a crime.  *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003),

*amended by* 2003 U.S. App. LEXIS 4608 (7th Cir. Mar. 14, 2003);  *Woods v. City of Chicago*,

234 F.3d 979, 987 (7th Cir. 2000).  "Probable cause existed if 'at the moment the arrest was made

. . . the facts and circumstances within [the officers'] knowledge and of which they had

reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that

the accused committed the crime.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v.

*Ohio,* 379 U.S. 89, 91 (1964)).  "Arresting officers may draw reasonable inferences based on their training and experiences in determining whether suspicious circumstances rise to the level of probable cause.  Whether probable cause exists 'turns on the information known to the officers at the moment the arrest [was] made, not on subsequently received information.'"  *Thompson*, 319 F.3d at 934-35 (quoting *United States v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001), *cert. denied sub nom Soto v. United States*, 535 U.S. 1004 (2002)).  An officer is entitled to qualified immunity for an arrest if it was objectively reasonable for him to have believed the arrest to be lawful in light of clearly established law and the information he possessed at the time.  *Hunter*, 502 U.S. at 227-28;  *Thompson*, 319 F.3d at 935.

In this case, considering the information Harms knew as reflected in his complaint for a search warrant and the evidence he subsequently found in the search of the plaintiffs' homes before the plaintiffs' seizure, a reasonable officer in Harms's position could conclude that there was probable cause to believe Russell and Davis committed the crime of theft.  Therefore, their seizures did not violate the Fourth Amendment and the defendants are entitled to qualified immunity.

C.   Consent to Search Storage Locker

Davis claims that the search of her storage locker on August 11, 2000, violated the Fourth Amendment because she did not consent to the search.  She further argues that, even if the Court finds that she consented to the second search, the second search was unconstitutional because consent was obtained when she was illegally seized during the search of her home.  The defendants point to the consent form to show that Davis voluntarily consented to the second search.

As for the voluntariness of the consent, the law is clear that the determination turns on the

totality of the circumstances.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).  As the Court noted earlier in this order, the defendants have presented evidence from which a reasonable jury could find that Davis voluntarily consented to the search.  Davis, on the other hand, has presented no evidence  whatsoever to create an issue of fact regarding either whether she signed the form or whether her signature was given voluntarily.  There is simply no admissible evidence from which a reasonable jury could find that she did not voluntarily give her consent to search the storage locker.

As for Davis's second argument, it is true that when a suspect is improperly seized, any consent the suspect gives is tainted and a search solely pursuant to that consent violated the Fourth Amendment.  *United States v. Jerez*, 108 F.3d 684, 694 n. 10 (7th Cir. 1997) (citing *United States v. Morgan,* 725 F.2d 56, 58 (7th Cir. 1984);  *Florida v. Royer*, 460 U.S. 493, 507-08 (1983) (plurality opinion)).  However, the Court has already determined that Davis was not illegally seized when she was taken to the police station during the search of her residence.  Her seizure, then, cannot taint her subsequent consent.

In any case, Davis has failed to demonstrate that it was clearly established at the time of the second search that, given the circumstances, the search violated her Fourth Amendment rights.  The defendants were not clearly incompetent for proceeding with the search pursuant to Davis's consent.

D.    Other Arguments

The Court need not address the defendants' other arguments in support of their motions for summary judgment in light of the fact that all defendants are entitled to qualified immunity for their acts in connection with the searches and seizures in this case.

The Court also notes that Russell and Davis attack the admissibility of the defendants'

18

evidence to support their summary judgment motions.  The Court assures the plaintiffs that it has accounted for the inadmissibility of certain pieces of evidence in reaching its decision on the pending motions.  It had not considered hearsay statements for the truth of the matters they assert, although it has considered them to show the state of mind of the person who heard the statements. It has used common sense to interpret statements identifying and authenticating documents submitted in support of the motions, and it has disregarded evidence that was not identified and authenticated to the Court's satisfaction.  By the same token, the Court has not considered materials filed outside the pleadings and the briefings on the motions for summary judgment, including materials attached to briefs on motions subsequent to the motions for summary judgment.  It is the parties' responsibility to present all relevant evidence in the briefings on the summary judgment motion, not the Court's responsibility to search the file for relevant evidence. *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996).

For the foregoing reasons, the Court will grant the defendants' motions for summary judgment (Docs. 34 & 53) as to Count I, the only claim over which the Court has original jurisdiction.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise subject matter jurisdiction over Counts II, III and IV.

As a final note, the Court must comment on the progression of this case.  First, the Court is suspicious of the good faith of the plaintiffs in filing their complaint without so much as mentioning a warrant, which turns out to be one of the central documents of this case.  The failure to mention the warrant misled the defendants, as is evidenced by the subjects contained in their motions for summary judgment, and the Court as to the scope of the issues in this case.  Only after the plaintiffs' response to the motion for summary judgment were everyone's eyes opened to the true (or hoped for) breadth of this case.  As a consequence, the roles of the parties' respective

briefs were shuffled, with the reply brief actually functioning as the brief in support of the

motion, and with any sur-reply material from the plaintiffs functioning as a response brief.  The

shuffle in functions is the plaintiffs' fault for pleading so vaguely, and the Court will not make

exceptions to its rule of not accepting sur-reply briefs to allow them to have the final word.  They

must live with the consequences of their pleading decisions, and they have absolutely no room to

complain that the Court did not consider post-briefing affidavits and other evidentiary materials

in ruling on the motion for summary judgment.

The Court is further disappointed at the unnecessary time and energy required in

discovery simply to provide the defendants the relevant documents in this case.  Court is not the

place to play a shell game, and someone who brings a suit based on events reflected in a sealed or

expunged file have no grounds to object when the party she is suing seeks to obtain that file.  On

the contrary, she should be expected to assist the defendants in obtaining the necessary documents

to proceed expeditiously with the case and to forego unreasonable challenges to the authenticity

of those documents.

The Court also notes a decided departure from the spirit of the Court's rules regarding

submission of a joint statement of facts.  The briefs in support of and in opposition to the motion

for summary judgment clearly concede the truth of certain facts that were not contained in the

joint statement.  The Court expects more than this from those who appear before it.

**V.    Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the plaintiffs' motion for leave to submit additional authority (Doc. 77);

- **GRANTS in part** and **DENIES in part** defendant Maier's motion for summary judgment
  (Doc. 34).  The motion is **GRANTED** as to Count I and **DENIED without prejudice** as
  to Counts II, III and IV;

- **GRANTS in part** and **DENIES in part** defendant Harms's and defendant King's motion for summary judgment (Doc. 53).  The motion is **GRANTED** as to Count I and **DENIED without prejudice** as to Counts II, III and IV;

- **DISMISSES** Counts II, III and IV **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  April 1, 2004**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
